UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHERMARRIE RIVERS,<br><br>          Plaintiff<br><br>v.<br><br>DONECIA WRIGHT, *et al.*,<br><br>          Defendants. | Case No. 1:19-cv-00916-DAD-BAM<br><br>FINDINGS AND RECOMMENDATIONS REGARDING DISMISSAL OF ACTION WITH PREJUDICE, FOR FAILURE TO STATE A CLAIM, FAILURE TO OBEY A COURT ORDER, AND FAILURE TO PROSECUTE<br><br>(Doc. No. 7)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**I.    Background**

Plaintiff Shermarrie Rivers ("Plaintiff") is proceeding pro se and in forma pauperis in this civil action. (Doc. No. 1.)

On October 8, 2019, the Court screened Plaintiff's complaint pursuant to 28 U.S.C. § 1915(e)(2) and granted her leave to file an amended complaint within thirty (30) days. (Doc. No. 7.) Plaintiff was warned expressly that if she failed to comply with the Court's order, then the Court would recommend dismissal of this action. (Id. at 9.) More than thirty (30) days have passed and no amended complaint has been filed.

///

///

1

## II. Failure to State a Claim

### A. Screening Requirement

The Court screens complaints brought by persons proceeding in pro se and in forma pauperis. 28 U.S.C. § 1915(e)(2). Plaintiff's complaint, or any portion thereof, is subject to dismissal if it is frivolous or malicious, if it fails to state a claim upon which relief may be granted, or if it seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences." Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (internal quotation marks and citation omitted).

To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss v. U.S. Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009). The sheer possibility that a defendant acted unlawfully is not sufficient, and mere consistency with liability falls short of satisfying the plausibility standard. Iqbal, 556 U.S. at 678 (quotation marks omitted); Moss, 572 F.3d at 969.

### B. Plaintiff's Allegations

Plaintiff names the following defendants: (1) Brad Hardie of Regency Property; and (2) Donecia Wright, CPS Supervisor. In her form complaint, Plaintiff asserts a failure to accommodate her disability, alleging she has ADHD and no schooling. Plaintiff states the facts of her case as follows: "She Removed my son with out p[r]oof." (Doc. No. 1 at 5.)

In addition to the foregoing, Plaintiff attaches numerous exhibits to her complaint. These exhibits include charts and documents regarding Child Protective Custody and the Juvenile Dependency Court Process, information and forms regarding Gabelcrest Transitional Recovery

2

Program for Women and Their Children, and a website printout for Regency Property Management and Brad Hardie.

Plaintiff also includes several handwritten pages. In these pages, Plaintiff alleges that she had a baby boy named Damar Ricks in 2011. Plaintiff was positive for cocaine. Her son was two weeks old when she went to Spirit of Woman and Plaintiff had an open CPS case. At four months, Plaintiff's mother passed away while she was in the program. CPS closed her case and she and her son were free to go. Plaintiff moved to First and Olive, where she met Brad Hardie. At that time, her son was six months old. Plaintiff went to Madera, California, and got locked up for two weeks for selling her body. When she returned to Fresno, Brad Hardie had removed all of the things from her home without notice.

On October 2013, a court case was opened, and Plaintiff went back to Spirit of Woman. CPS placed her son with her. Plaintiff completed both inpatient and outpatient treatment. Plaintiff's case worker also was her son's father's case worker when he was in the system. Plaintiff contends that Brad Hardie is law enforcement. She claims discrimination and violation of her parental rights. She asserts that she has been looking for help since having an open CPS case.

Plaintiff further alleges that Brad Hardie told the Spirit of Woman director, Mrs. Riley, that he was going to help the program. On March 20, 2019, Spirit of Woman was closed down. On June 16, 2019, Plaintiff contacted Mrs. Riley and was told that Mr. Hardie was going to buy the property.

In 2011, a month before Plaintiff had her son, Deshawn Ricks was caught shopping weed to Texas. He was bailed out and never returned to Texas for his court date. Plaintiff claims that the supervisor, Mrs. White, was close to Mr. Ricks' family, she raised him and was his worker when he was in the system. When the home got raided, there were three kids involved – 4-year-old Deshawn Ricks, Jr., 3-year-old Damar Ricks, and 2-year-old Ja'shawn Ricks. All of the kids were removed. The mother of Deshawn Jr. and Ja'shawn Ricks, Jasmise McKenny, did outpatient. The mother of Damar Ricks, Plaintiff, went to Spirit of Woman.

When Plaintiff went to Spirit of Woman, she thought she was pregnant. At the time, she

3

was in a bad accident and did not care about anything but getting a home for her and her child. One week while she was in the program, Plaintiff was doing laundry. As she was walking to the laundry room, she felt like fainting. She went into the office and in 30 minutes when to CRMC. She had a STD, which was killing her. Her insides were shutting down and they removed "the hole left side of [her] body part." (Doc. No. 1 at 43.) Plaintiff had a court hearing coming up and then had surgery the following week.

Plaintiff and some other women all went to Court and the judge asked for the Program's recommendation. Mrs. Riley told the judge that Plaintiff was not in good health and did not think it was the appropriate time for a placement. Plaintiff hated her at that time.

During all of this, Plaintiff was seeing a man named David Conrtrans. She never sold her body for him and he never asked her to do such a thing. Brad Hardie assumed that Plaintiff was selling her body and he was my pimp. Plaintiff claims this is false, and she and Dave were never in a relationship.

Plaintiff asserts that the worker in her case is now in Madera, California. Plaintiff went out there and the supervisor told Plaintiff that the worker was on medical leave. Plaintiff has to pay $35 every visit that she has with her child. Plaintiff asserts that she still has her rights and she only is allowed to see her son three times in a year. No one in Fresno or Los Angeles will take her case.

### C. Discussion

#### 1. Federal Rule of Civil Procedure 8

Pursuant to Federal Rule of Civil Procedure 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678 (citation omitted). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570, 127 S.Ct. at 1974). While factual allegations are accepted as true, legal conclusions are not. Id.; see also Twombly, 550 U.S. at 556–557.

Plaintiff's complaint is not short, plain statement of her claims. As a basic matter, the complaint does not clearly state what happened, when it happened or who was involved. It is not in chronological order and does not set forth sufficient facts for the Court to assess whether Plaintiff has stated a cognizable claim for relief.

### 2. Eleventh Amendment Immunity

To the extent Plaintiff is attempting to pursue a civil rights claim against the Child Protective Services department, she may not do so. See, e.g., Will v. Michigan Dep't of State Police, 491 U.S. 58, 65-67 (1989) (Eleventh Amendment bars section 1983 suits against an non-consenting state or arm of state for deprivation of civil liberties); Austin v. State Indus. Ins. Sys., 939 F.2d 676, 678 (9th Cir. 1991) (the "central concern" of determining that a department is an 'arm of the state' is "whether a judgment against the entity named as a defendant would impact the state treasury"). Child Protective Services is not a proper defendant because it is a state entity immune from suit under the Eleventh Amendment. See Gomez v. Fresno Police Dep't, No. 1:16-cv-00526-LJO-SKO, 2016 WL 2939416, at *4 (E.D. Cal. May 20, 2016) (finding Child Protective Services not a proper defendant in section 1983 action because it is a state entity immune from suit under the Eleventh Amendment).

### 3. Defendant Brad Hardie

The nature of Plaintiff's claims against Defendant Brad Hardie are unclear. Insofar as Plaintiff is attempting to pursue civil rights claims against him, she may not do so because he appears to be a private actor. To state a claim under 42 U.S.C. § 1983, a complaint must allege: (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or laws of the United States. Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, Daniels v. Williams, 474 U.S. 327 (1986). Generally, private parties are not acting under color of state law. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful[.]") (internal quotation marks and quoted sources omitted). A private actor acts under color of state law only if (1) the private actor

performs a public function; (2) the private actor engages in joint action with a state actor; (3) the private actor is subject to government coercion or compulsion or (4) there is a governmental nexus with the private actor. See Kirtley v. Rainey, 326 F.3d 1088, 1092-96 (9th Cir. 2003) (citing cases). Plaintiff's complaint does not make the necessary showing that Defendant Brad Hardie was acting under color of state law.

### 4. Child Custody Claims

The crux of Plaintiff's complaint appears to involve child custody and visitation issues. The Court is without jurisdiction over Plaintiff's claims concerning child custody issues because they are exclusively matters of state law. See Ankenbrandt v. Richards, 504 U.S. 689, 702-704 (1992) (holding that the domestic relations exception to federal subject matter jurisdiction "divests the federal courts of power to issue divorce, alimony and child custody decrees."); see also Peterson v. Babbitt, 708 F.2d 465, 466 (9th Cir.1983) (stating that "federal courts have uniformly held that they should not adjudicate cases involving domestic relations, including 'the custody of minors and *a fortiori*, right of visitation.' For that matter, the whole subject of domestic relations and particularly child custody problems is generally considered a state law matter"). "Even when a federal question is presented, federal courts decline to hear disputes which would deeply involve them in adjudicating domestic matters." Thompson v. Thompson, 798 F.2d 1547, 1558 (9th Cir.1986).

Further, to the extent Plaintiff is challenging an order of the state court regarding custody or visitation, she may not do so. This Court lacks subject matter jurisdiction to review the final determinations of state court dependency proceedings. See, e.g., Worldwide Church of God v. McNair, 805 F.2d 888, 890 (9th Cir.1986) ("The United States District Court ... has no authority to review the final determinations of a state court in judicial proceedings."). Under the Rooker-Feldman doctrine, a federal district court does not have subject-matter jurisdiction to hear an appeal from the judgment of a state court. Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 283-84 (2005); see also Dist. of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983); Rooker v. Fidelity Trust Co., 263 U.S. 413, 415 (1923). Therefore, Plaintiff's claims against CPS or its employees relating to the removal of her son from her custody, which

presumably arise from state court orders, would be barred by the Rooker-Feldman doctrine. Johnson v. Child Protective Servs., No. 2:16-cv-763-GEB-EFB PS, 2017 WL 4387309, at *2 (E.D. Cal. Oct. 3, 2017) (finding that constitutional claims relating to plaintiffs' children being removed from their custody and placed in foster care, which were the subject of a state court action, barred by the Rooker-Feldman doctrine).

### 5. Disability Discrimination

Plaintiff appears to assert a claim for disability discrimination. However, the nature of this claim is unclear. Title II of the ADA prohibits a public entity from discriminating against a qualified individual with a disability on the basis of disability. 42 U.S.C. § 12132 (1994); Weinreich v. L.A. County Metro. Transp. Auth., 114 F.3d 976, 978 (9th Cir.1997). "To state a claim of disability discrimination under Title II of the ADA, the plaintiff must allege four elements: (1) the plaintiff is an individual with a disability, (2) the plaintiff is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities, (3) the plaintiff was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity, and (4) such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002); 42 U.S.C. § 12132. Plaintiff's complaint does not adequately allege any of these four elements.

### 6. Due Process

It appears that Plaintiff may be alleging a denial of familial association. However, the nature of this claim is unclear. Parents have a constitutionally protected liberty interest in the care and custody of their children. Santosky v. Kramer, 455 U.S. 745, 753 (1982). "A parent's desire for and right to 'the companionship, care, custody and management of his or her children' is an important interest that 'undeniably warrants deference and, absent a powerful countervailing interest, protection." Lassiter v. Dep't of Soc. Servs. of Durham Cty., N. C., 452 U.S. 18, 27 (1981) (quoting Stanley v. Illinois, 405 U.S. 645, 651 (1972)); accord Kelson v. City of Springfield, 767 F.2d 651, 655 (9th Cir. 1985). Further, the Supreme Court held long ago that an unwed father's interest in having custody of his children is cognizable and substantial. Stanley,

405 U.S. at 652.

"While a constitutional liberty interest in the maintenance of the familial relationship exists, this right is not absolute. The interest of the parents must be balanced against the interests of the state and, when conflicting, against the interests of the children." Woodrum v. Woodward Cty., Okl., 866 F.2d 1121, 1125 (9th Cir. 1989). The right to familial association has both a substantive and a procedural component. Keates v. Koile, 883 F.3d 1228, 1236 (9th Cir. 2018) "While the right is a fundamental liberty interest, officials may interfere with the right if they "provide the parents with fundamentally fair procedures[.]" Keates, 883 F.3d at 1236 (internal citations omitted); see also Kirkpatrick v. Cty. of Washoe, 843 F.3d 784, 789 (9th Cir. 2016) (quoting Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 1999)) (The Fourteenth Amendment guarantees "that parents and children will not be separated by the state without due process of law except in an emergency.")

To state a claim under the Due Process Clause, it is not enough to allege that a state actor interfered with the familial relationship. Woodrum, 866 F.2d at 1125. "Officials may not remove children from their parents without a court order unless they have 'information at the time of the seizure that establishes reasonable cause to believe that the child is in imminent danger of serious bodily injury.'" Keates, 883 F.3d at 1236 (quoting Rogers v. County of San Joaquin, 487 F.3d 1288, 1294 (9th Cir. 2007)); see also Caldwell v. LeFaver, 928 F.2d 331, 333 (9th Cir. 1991) (a state agency may remove children from their parents' custody in an emergency situation if the children are subject to immediate or apparent danger or harm.).

Here, it is unclear whether her child was removed by court order, but it may be inferred that such an order exists since CPS removed the child, in light of Plaintiff's history of substance abuse and incarceration. Plaintiff cannot state a cognizable claim for denial of familial association in violation of Due Process where a lawful removal court order has been issued.

**III.   Failure to Prosecute and Failure to Obey a Court Order**

    **A.   Legal Standard**

Local Rule 110 provides that "[f]ailure . . . of a party to comply with these Rules or with any order of the Court may be grounds for imposition by the Court of any and all sanctions . . .

within the inherent power of the Court." District courts have the inherent power to control their dockets and "[i]n the exercise of that power they may impose sanctions including, where appropriate, . . . dismissal." Thompson v. Housing Auth., 782 F.2d 829, 831 (9th Cir. 1986). A court may dismiss an action, with prejudice, based on a party's failure to prosecute an action, failure to obey a court order, or failure to comply with local rules. See, e.g., Ghazali v. Moran, 46 F.3d 52, 53–54 (9th Cir. 1995) (dismissal for noncompliance with local rule); Ferdik v. Bonzelet, 963 F.2d 1258, 1260-61 (9th Cir. 1992) (dismissal for failure to comply with an order requiring amendment of complaint); Malone v. U.S. Postal Serv., 833 F.2d 128, 130–33 (9th Cir. 1987) (dismissal for failure to comply with court order).

In determining whether to dismiss an action, the Court must consider several factors: (1) the public's interest in expeditious resolution of litigation; (2) the Court's need to manage its docket; (3) the risk of prejudice to the defendants; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. Henderson v. Duncan, 779 F.2d 1421, 1423 (9th Cir. 1986); Carey v. King, 856 F.2d 1439, 1440 (9th Cir. 1988).

**B.     Discussion**

Here, the action has been pending since July 2019 and Plaintiff's amended complaint is overdue. The Court cannot hold this case in abeyance awaiting compliance by Plaintiff. Thus, the Court finds that both the first and second factors weigh in favor of dismissal.

The third factor, risk of prejudice to defendant, also weighs in favor of dismissal, since a presumption of injury arises from the occurrence of unreasonable delay in prosecuting an action. Anderson v. Air West, 542 F.2d 522, 524 (9th Cir. 1976). The fourth factor usually weighs against dismissal because public policy favors disposition on the merits. Pagtalunan v. Galaza, 291 F.3d 639, 643 (9th Cir. 2002). However, "this factor lends little support to a party whose responsibility it is to move a case toward disposition on the merits but whose conduct impedes progress in that direction," which is the case here. In re Phenylpropanolamine (PPA) Prods. Liab. Litig., 460 F.3d 1217, 1228 (9th Cir. 2006) (citation omitted).

Finally, the court's warning to a party that failure to obey the court's order will result in dismissal satisfies the "considerations of the alternatives" requirement. Ferdik, 963 F.2d at 1262;

Malone, 833 at 132–33; Henderson, 779 F.2d at 1424. The Court's October 8, 2019 order expressly warned Plaintiff that her failure to comply with the Court's order could result in dismissal of this action. (Doc. No. 7.) Thus, Plaintiff had adequate warning that dismissal could result from her noncompliance.

Additionally, at this stage in the proceedings there is little available to the Court which would constitute a satisfactory lesser sanction while protecting the Court from further unnecessary expenditure of its scarce resources. Plaintiff is proceeding in forma pauperis in this action, making monetary sanctions of little use, and the preclusion of evidence or witnesses is likely to have no effect given that Plaintiff has ceased litigating her case.

### III. Conclusion and Recommendation

For the reasons stated, it is **HEREBY RECOMMENDED** that this action be dismissed, with prejudice, for Plaintiff's failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2), for failure to obey the Court's October 8, 2019 order and for Plaintiff's failure to prosecute this action.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (*citing* Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **November 20, 2019**      /s/ *Barbara A. McAuliffe*
UNITED STATES MAGISTRATE JUDGE